1:23-mj-3124-TMP

# AFFIDAVIT IN SUPPORT OF A

# SEARCH WARRANT

I, Michael Adams, hereinafter referred to as Your Affiant, being duly sworn under oath, hereby depose and state as follows:

1. This affidavit is being submitted under Federal Rule of Criminal Procedure 41 in support of a search warrant for a USPS parcel (Target Parcel 2). As explained in more detail below, JAVIER MUNOZ and RAHEEM BRIGGS each traveled to the Cleveland area from out-of-state, stayed at separate rooms in a Best Western hotel, drove together to rent a U-Haul, and then took their U-Haul to a freight company in Middleburg Heights, where freight was loaded into the back of it. On March 30, 2023, their U-Haul was stopped and searched by law enforcement. BRIGGS was driving the U-Haul and MUNOZ was following behind in a rented GMC Terrain. Concealed in the freight in the back of the U-Haul, law enforcement found approximately six (6) kilograms of field-tested cocaine and several hundred pounds of a crystal substance (suspected methamphetamine). Inside MUNOZ's rented GMC Terrain, law enforcement found numerous money order receipts, which are consistent with how drug traffickers commonly send and exchange money for large drug shipments. During a search incident to arrest of MUNOZ, law enforcement found a receipt for a FedEx parcel (Target Parcel 1) sent via overnight delivery from the Cleveland area to MUNOZ's address in Phoenix, AZ on March 29, 2023. Law enforcement also found on MUNOZ's person a receipt for a USPS parcel (Target Parcel 2, which this warrant seeks to search) that had been mailed from the Parma, OH post office on March 29th to Phoenix, AZ. Law enforcement obtained a federal search warrant for the FedEx parcel that MUNOZ had sent from Cleveland to Phoenix on March 29th (Target Parcel 1), and found that it contained a number of money orders, which is consistent with how

1

drug traffickers would send money involved in large-scale trafficking. Your affiant therefore submits there is probable cause to believe the USPS parcel that MUNOZ mailed from Ohio to Arizona (Target Parcel 2) also contains money orders related to this drug trafficking activity.

2. I am a United States Postal Inspector and have been so employed since August 2015, presently assigned at Cleveland, Ohio. From August 2015 to October 2015, I attended the United States Postal Inspection Service Basic Training Academy where I have received training in the detection and investigation of prohibited mailing offenses. I have worked U.S. Postal Service-related investigations for approximately 8 years, during which time I have been the case agent for investigations leading to prosecution in U. S. District Court.

3. From April 2007 to August 2015, I was employed by the Lake County Narcotics Agency (LCNA) as a Special Agent. As an LCNA Special Agent, I was authorized to conduct investigations into alleged violations of Ohio State Drug Laws; specifically, I was trained and experienced in investigations of drug offenses as defined in Chapter 2925 of the Ohio Revised Code, undercover drug sale operations, and the manufacture of illegal controlled substances. I have applied for and executed numerous state search warrants leading to prosecutions within the state court system.

4. As a result of your Affiant's personal participation in this investigation and reports made to your Affiant by other Special Agents, Investigators and other state and local law enforcement officers, witnesses and reliable confidential sources, your Affiant is familiar with the circumstances and offenses described in this Affidavit.

**BACKGROUND AND PROBABLE CAUSE**

5. On March 29, 2023, investigators were conducting surveillance at the Best Western, located at 16501 Snow Rd., Cleveland, Ohio. During surveillance, investigators

2

observed a male, later identified as MUNOZ, who departed the Best Western alone in a red GMC Terrain with Ohio plate JEG9717 and returned approximately 25 minutes later with another male, later identified as RAHEEM BRIGGS. The GMC Terrain was listed to PV Holdings, a rental vehicle company. Investigators contacted PV Holdings who stated Javier Munoz rented the GMC Terrain on March 28, 2023, and it was due back on March 30, 2023.

6. Continuing on March 29, 2023, at approximately 10:30 am, investigators observed MUNOZ enter the red GMC Terrain and depart the Best Western. MUNOZ immediately pulled into the Holiday Inn, 16330 Snow Rd., Cleveland, OH, across the street circling the parking lot at a slow rate of speed indicative of countersurveillance. MUNOZ departed the Holiday Inn taking 71 North towards Cleveland. At that time, investigators were unable to follow MUNOZ.

7. Investigators spoke with Best Western management and learned that MUNOZ checked in on March 28th for one night and extended on March 29th. MUNOZ provided his Arizona driver's license to management and indicated on his vehicle registration he was driving a red GMC Terrain. MUNOZ was assigned room #200 at the Best Western. Best Western management informed investigators that BRIGGS checked-in on March 29, 2023, and due out March 30th. BRIGGS provided his Georgia driver's license at time of check-in. BRIGGS was assigned room #321 at Best Western.

8. Continuing on March 29th, investigators setup surveillance at Best western awaiting MUNOZ's return. At approximately 11:30 am, MUNOZ arrived at the Best Western in the same GMC terrain entering the hotel.

9. At approximately 7:30 pm, investigators observed MUNOZ and BRIGGS enter the GMC Terrain departing the Best Western. They arrived at the Chipotle Mexican Grill,

10325 Cascade Crossing, Brooklyn, OH, and ate food inside the establishment. At approximately, 8:34 pm, both MUNOZ and BRIGGS departed Chipotle and returned to the Best Western together.

10. The following morning, March 30, 2023, at approximately 7:30 am, investigators observed MUNOZ and BRIGGS enter the GMC Terrain and depart the Best Western together. Investigators conducted physical surveillance of MUNOZ and BRIGGS until they arrived at U-Haul, 5809 Stumph Rd., Parma Hts., OH. BRIGGS entered the U-Haul office and then returned to the GMC Terrain. MUNOZ then entered the U-Haul office after BRIGGS exited.

11. At 8:06 am, MUNOZ departed in a U-Haul while BRIGGS departed in the GMC Terrain. MUNOZ and BRIGGS drove their respective vehicles to the Sheetz Gas Station, 5795 W.130th St., Parma, OH, where investigators observed MUNOZ switch vehicles with BRIGGS. MUNOZ was now driving the GMC Terrain and BRIGGS was driving the U-Haul. Both MUNOZ and BRIGGS departed Sheetz in their vehicles.

12. Investigators later spoke to the U-Haul manager about what happened. The manager stated that BRIGGS had attempted to rent the U-Haul but was denied due to an alert for BRIGGS' name in U-Haul's computer system. The manager explained that BRIGGS had an alert in the system because he failed to refuel a U-Haul that had been returned on March 28, 2023, in Georgia. The manager explained that after BRIGGS was denied the rental, MUNOZ came into the store and rented a U-Haul in his own name. The manager was unaware whether MUNOZ and BRIGGS were connected to each other.

13. At approximately 8:26 am, both MUNOZ and BRIGGS arrived at a freight company: Forward Air Inc., 19681 Commerce Parkway West, Middleburgh Hts., OH.

BRIGGS pulled the U-Haul to the loading dock bay at Forward Air. Meanwhile, MUNOZ was circling the parking lots of the various businesses in the area of Forward Air. Investigators believed that MUNOZ was conducting countersurveillance and checking the area for the presence of law enforcement.

14. Investigators observed Forward Air loading dock door #20 open. (Investigators later spoke with Forward Air employees, who advised that they loaded freight into the U-Haul BRIGGS had pulled up to door #20). Investigators saw BRIGGS inside Forward Air watching the freight being placed into the U-Haul.

15. BRIGGS then retrieved shipping paperwork from the employee and got back into the driver's seat of the U-Haul. BRIGGS departed Forward Air. MUNOZ followed BRIGGS in the GMC Terrain. Both MUNOZ and BRIGGS left northbound on Eastland Rd. The vehicles approached State Route 237 and stopped for a red light. Investigators observed the U-Haul turn right onto State Route 237 without using its turn signal, which is a violation of Ohio law.

16. Investigators coordinated with Ohio State Highway Patrol (OSP) and made OSP aware of the U-Haul's traffic violation. As OSP was catching up with the U-Haul, OSP advised they observed the U-Haul commit a marked lanes violation, in violation of Ohio law.

17. Eventually, OSP caught up with the U-Haul and conducted a traffic stop for the violations. OSP stopped the U-Haul at the exit ramp for Tiedeman Road off I-480. OSP approached the vehicle and made contact with BRIGGS. OSP inquired about BRIGGS' travels, and he stated, "I was going to the store and coming from picking up a load but was unsure where from." OSP asked BRIGGS what he was hauling, and BRIGGS responded he was unsure. BRIGGS provided OSP a copy of the bill of lading. The bill of lading listed

audio equipment. BRIGGS told OSP that BRIGGS' boss rented the U-Haul and BRIGGS came up from Georgia to pick up the load and drop it off. BRIGGS said he worked for Lopez Logistics LLC.

18. OSP asked BRIGGS to exit the U-Haul, which he did. They placed BRIGGS in the patrol car. A certified OSP narcotics K9 arrived on-scene and completed a free air sniff around the U-Haul for narcotic odor. The OSP handler advised the K9 alerted to the odor of drugs in the U-Haul. OSP advised BRIGGS of his *Miranda* Warnings at which time BRIGGS was asked if there was anything illegal in the vehicle. BRIGGS stated, "Not that I know of."

19. A probable cause search of the U-Haul was conducted. Law enforcement found a large crate with plastic wrapping in the back of the U-Haul. OSP removed the wrapping, and a large steel box was on the crate. OSP opened the crate and inside the steel box found four suitcases/bags and black trash bags. A further check of the contents of the bags revealed moth balls (commonly used to try and mask the smell of drugs), plastic wrapped white crystal substance (suspected methamphetamine), and six kilogram-sized wrapped rectangle bricks. Based on OSP's training and experience, they believed the items to be suspected narcotics.

20. OSP placed BRIGGS under arrest and notified investigators of the suspected narcotics. Investigators seized the suspected narcotics and transported them to the Strike Force Building. Investigators field tested two of the six kilogram bricks utilizing the Nik-II test kit, yielding a positive test for cocaine. Because the other four kilogram bricks were similar in size and appearance to the two that were tested, Your Affiant believes that there was a total of six (6) kilograms of cocaine seized. The white crystal substance (suspected

methamphetamine) was not field-tested, but it was determined to weigh several hundred pounds.

21. At approximately the same time that the U-Haul was initially stopped, OSP saw the red GMC Terrain being driven by MUNOZ driving at a speed of 68 mph in a posted area of 60 mph. As noted above, the GMC Terrain was following the U-Haul before the U-Haul was stopped. OSP conducted a traffic stop of the GMC Terrain based on speeding. OSP approached the vehicle and spoke with MUNOZ. MUNOZ advised he was in town visiting family and was flying out the same day. Another OSP K9 was on-scene and completed a free air sniff around the GMC for narcotic odor. OSP's K9 indicated on the GMC for narcotic odor. OSP requested MUNOZ exit the vehicle and placed MUNOZ in their patrol vehicle. A search of the GMC Terrain revealed a broken cell phone and a U-Haul rental agreement. Additionally, a box cutter and wire cutter were located in the GMC. The box cutter and wire cutter were consistent with the kind of tools needed to open the freight in the back of the U-Haul that the drugs were concealed inside. OSP did not locate nay narcotics in the Terrain. MUNOZ was arrested. Also located during the search of the GMC Terrain were numerous money order receipts.

22. During a search incident to arrest of MUNOZ, Troopers located a FedEx receipt dated March 29th, 2023 for a parcel (Target Parcel 1) that had been sent from a Fedex store located at 4832 Ridge Road Cleveland, OH. The receipt was for overnight delivery to JAVIER MUNOZ 121 N 20th St, Phoenix, AZ, which is MUNOZ's residential address. The shipping price was $47.55 and it was paid for with a credit card. CGNL investigators spoke with Fedex Security who were able to track Target Parcel 1 and have it rerouted back to Cleveland, OH for further investigation by law enforcement.

23. With assistance from FedEx, CGNL investigators took custody of that FedEx parcel (Target Parcel 1). Target Parcel 1 was a FedEx envelope bearing the same tracking number as the receipt seized from MUNOZ. It listed MUNOZ's name on both the delivery and sender boxes.

24. In addition to the FedEx receipt referenced above, a USPS receipt was also located on MUNOZ during his search incident to arrest. The receipt was for a USPS parcel with tracking number 9505515230493088471823, sent from the Parma, OH post office (7801 Day Drive, Parma, OH) on March 29, 2023 (Target Parcel 2). The USPS receipt described Target Parcel 2 as a Priority Mail Flat Rate Envelope sent to Phoenix, AZ with $9.65 in shipping, paid in cash, with an expected delivery date of April 1, 2023. The receipt did not list the specific delivery address in Phoenix.

25. Your Affiant and other investigators know from training and experience that a common way for drug traffickers to send money payments across state lines is by mailing hard copies of money orders. The advantage of mailing money orders, as opposed to wiring money or shipping cash, is that hard copies of money orders sent through the mail are difficult for law enforcement to track and interdict. Whereas drug-related cash can often be detected by a trained canine, a "clean" printed money order in a small envelope would not cause a canine to alert. Printed money orders also take up far less spaces in a parcel than bulk amounts of cash, so drug traffickers believe that envelopes raise less suspicion than larger parcels. Also, drug traffickers believe that "clean" money orders would look less suspicious than bulk amounts of cash if they were each seized. Your Affiant and other investigators also know that border states like Arizona are common destinations for money orders related to drug trafficking, since the money is typically funneled back to drug cartels in Mexico that

supply a large amount of the drugs smuggled into the United States. Mailing money orders is also less risky for drug traffickers than smuggling the money orders themselves, since they can keep a layer between themselves and the money. Further, as noted above, OSP found money order receipts in MUNOZ's GMC Terrain, and if MUNOZ was only temporarily visiting family in Ohio, as he claimed, it would not make much sense for him to spend $47 overnighting a FedEx envelope back to his residence, when he could easily just put whatever is in the envelope into his luggage and carry it with him back to Phoenix. MUNOZ also had a receipt for a USPS parcel (Target Parcel 2) on his person sent to Phoenix from Parma on the same date as the FedEx parcel (March 29), which further corroborates that he was sending back drug-related information to Phoenix.

26. All of those facts, when taken together, led investigators to conclude that the FedEx and USPS mailings contained money orders or other documents related to payment for the drugs in the back of the U-Haul. Often individuals involved in drug trafficking will utilize money orders instead of U.S. Currency that potentially has been contaminated by narcotics. The "clean paper money orders" would then avoid detection by trained narcotics sniffing K-9's. Furthermore, investigators are aware that narcotics are sent North from Mexico and/or the Southern border states, while drug proceeds are sent South to Mexico and/or Southern border states. Your Affiant believes MUNOZ was sending money orders in lieu of U.S. Currency back to Arizona to eventually pay his supplier for the cocaine and suspected methamphetamine.

27. On March 31, 2023, FBI investigators obtained a federal search warrant for the FedEx parcel (Target Parcel 1). Investigators executed the warrant and found that Target Parcel 1 contained a total of approximately $8,000 in money orders in $500 increments,

which confirmed investigators' belief that MUNOZ was mailing money orders back to Arizona consistent with the activity of a person trafficking large quantities of drugs.

28. On March 31, 2023, investigators contacted Your Affiant, PI Michael Adams, USPIS, regarding the above stated USPS receipt for Target Parcel 2 found on Munoz' person. PI Michael Adams checked USPS databases and identified that Target Parcel 2 was outbound to Phoenix, AZ; USPS Priority Mail Parcel no. 9505 5152 3049 3088 4718 23, addressed to Maury Munoz, 3309 W Lynwood, Phoenix, AZ 85009, bearing a return address of Javier Munoz, 121 N 20th St, Phoenix, AZ 85034.

29. On the same day, PI Adams contacted USPS management at the Phoenix, AZ 85009 Post Office and instructed them to conduct a parcel intercept on Target Parcel 2 and forward it to the USPIS Cleveland Field Office for further examination and storage, based on investigators' belief that Target Parcel 2 also likely contained money orders sent by MUNOZ.

30. On April 4, 2023, PI Adams took possession of Target Parcel 2 at the USPIS Cleveland Field Office.

31. Target Parcel 2 is described as a white USPS Priority Mail Flat Rate Envelope, weighing approximately 4.40 ounces, and measuring 12.60" X 9.60". Target Parcel 2 was mailed on March 29, 2023, from the Parma, OH 44129 Post Office and bore $9.65 in U.S. Postage.

32. I know from my training and experience that Priority Mail is commonly used to transport controlled substances because the Priority Mail system provides traceability, reliability, and timely delivery. The 1-5-day delivery timeframe of Priority Mail places time

pressures on law enforcement agents to identify, search, and deliver these drug parcels in a timely manner.

33. In furtherance of the investigation, PI Adams made inquiries with CLEAR, a database which has proven reliable in determining the legitimacy of name and address information and was able to associate "Maury Munoz," at 3309 W Lynwood, Phoenix, AZ 85009, in CLEAR. PI Adams was able to associate "Javier Munoz," at 121 N 20th St, Phoenix, AZ 85034, in CLEAR.

34. It should also be noted that investigators queried law enforcement databases and learned that on March 28, 2023, MUNOZ flew into Cleveland, Ohio from Atlanta, Georgia. Additionally, as stated above, U-Haul alerted to BRIGGS renting a U-Haul in Georgia on March 26, 2023, with a return date of March 28, 2023. Based on those circumstances, Your Affiant believes that MUNOZ and BRIGGS were traveling together. Also, investigators responded to Forward Air and spoke with management. Forward Air voluntarily provided a copy of the waybill for the freight BRIGGS picked up. The waybill showed the shipping customer as Lopez Logistics LLC, which is the entity that BRIGGS claimed to work for.

35. Both MUNOZ and BRIGGS are pending federal charges on criminal complaints in the Northern District of Ohio based on this investigation.

36. Based on all of those facts, Your Affiant submits there is probable cause to issue the requested search warrant for Target Parcel 2.

_____
Michael Adams
U.S. Postal Inspector

Sworn to via telephone after submission by reliable electronic means. Crim.Rules. 4.1; 41(d)(3)



Thomas M. Parker
United States Magistrate Judge
**2:47 PM, Apr 5, 2023**